KLINE & SPECTER
1800 Chapel Avenue
Cherry Hill, New Jersey 08002
(856) 662-1180
Attorneys for Plaintiffs



| | |
|---|---|
| SHARON CLARK<br>Co- ADMINISTRATOR AD PROSEQUENDUM<br>OF THE ESTATE OF JOEL SEIDEL, Deceased<br>c/o Kline & Specter<br>1800 Chapel Avenue<br>Cherry Hill, New Jersey 08002<br><br>and<br><br>DEVRA SEIDEL<br>Co- ADMINISTRATOR AD PROSEQUENDUM<br>OF THE ESTATE OF JOEL SEIDEL, Deceased<br>c/o Kline & Specter<br>1800 Chapel Avenue,<br>Cherry Hill, New Jersey 08002<br><br>          Plaintiffs,<br>v.<br><br>CAMDEN COUNTY CORRECTIONAL FACILITY,<br>CAMDEN COUNTY DEPARTMENT OF<br>CORRECTIONS, CAMDEN COUNTY,<br>PRISON HEALTH SERVICES, INC.,<br>STEININGER BEHAVIORAL CARE SERVICES,<br>JAMES FOSTER, JAMES McINTYRE,<br>DOROTHY WILLIAMS,<br>ERIC TAYLOR, and DAVID OWENS<br><br>          Defendants. | UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF NEW JERSEY<br><br><br>04cv1987(SSB)<br><br>CIVIL ACTION - COMPLAINT AND<br>**DEMAND FOR JURY TRIAL** |

## CIVIL ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Sharon Clark and Devra Seidel, as Co-Administrators Ad Prosequendum of the Estate of Joel Seidel, by their attorneys, Kline & Specter, say by way of Complaint against defendants, as follows:

### Jurisdiction and Venue

1. Jurisdiction in this Court is invoked pursuant to 42 U.S.C. §1983. Plaintiff also invokes the pendant jurisdiction of this Court to hear and decide claims arising under state law.

2. The practices alleged in this complaint were and are being committed in the District of New Jersey, wherein, upon reasonable belief, all of the parties reside, govern, and operate. Therefore, venue in this Court is invoked under 28 U.S.C. §§1331 and 1343 (1), (3) and (4).

**KLINE & SPECTER**

## PARTIES

3. Plaintiff, Sharon Clark, Co-Administrator Ad Prosequendum of the Estate of Joel Seidel, is an adult female and citizen of the State of Maryland.

4. Plaintiff, Devra Seidel, Co-Administrator Ad Prosequendum of the Estate of Joel Seidel, is an adult female and citizen of the State of New Jersey.

5. Sharon Clark and Devra Seidel were appointed as Co-Administrators Ad Prosequendum of the Estate of Joel Seidel on February 26, 2004. Letters of Administration Ad Prosequendum are attached hereto as Exhibit "A."

6. Defendant, Camden County Correctional Facility, is a department and/or division of the County of Camden with a business address at 330 Federal Street, Camden, New Jersey 08101.

7. Defendant, Camden County Department of Corrections, is a department and/or division of the County of Camden with a business address at 330 Federal Street, Camden, New Jersey 08101.

8. Defendant, the County of Camden ("the County"), is a public corporation organized and existing pursuant to the laws of the State of New Jersey with a business address of 520 Market Street, Camden, New Jersey 08102. At all times relevant hereto, defendant County of Camden owned, operated, managed, directed and controlled the Camden County Correctional Facility, which employed the individually named defendants.

9. Defendant, Prison Health Services, Inc., ("Prison Health Services") is a corporation or other jural entity organized and existing under the laws of the State of New Jersey, with a business address at Webster Commons, 271 Grove Avenue, Building E, Verona, New Jersey 07044.

10. Defendant, Steininger Behavioral Care Services ("Steininger") is a corporation or other jural entity organized and existing under the laws of the State of New Jersey, with a business address at 499 Cooper Landing Road, Cherry Hill, New Jersey 08002.

11. At all times relevant hereto, defendants Prison Health Services and Steininger contracted to provide medical care and other mental health services to inmates of the Camden County Correctional Facility.

12.  Upon information and belief, defendant James Foster ("Foster") is an adult male and citizen of the State of New Jersey, with a business address c/o The Camden County Correctional Facility, 330 Federal Street, Camden, New Jersey 08101.

13.  Upon information and belief, defendant James McIntyre ("McIntyre") is an adult male and citizen of the State of New Jersey, with a business address c/o The Camden County Correctional Facility, 330 Federal Street, Camden, New Jersey 08101.

14.  Upon information and belief, defendant Dorothy Williams ("Williams") is an adult female and citizen of the State of New Jersey, with a business address c/o The Camden County Correctional Facility, 330 Federal Street, Camden, New Jersey 08101.

15.  At all times relevant hereto, including at the time of Joel Seidel's murder, defendants Foster, McIntyre, and Williams were working in the course and scope of their employment and in their official capacities as employees and correctional officers of the Camden County Correctional Facility, and were employed by the defendants County of Camden, Camden County Correctional Facility and Camden County Department of Corrections.

16.  Upon information and belief, defendant David Owens ("Owens") is an adult male and believed citizen of the State of New Jersey, with a business address of 520 Market Street, Camden, New Jersey 08102.

17.  At times relevant hereto, defendant Owens was the Warden of the Camden County Correctional Facility, and was empowered to and did formulate, establish and enforce policies at the facility regarding the detention and safety of inmates.

18.  Upon information and belief, defendant Eric Taylor ("Taylor") is an adult male and believed citizen of the State of New Jersey, with a business address c/o The Camden County Correctional Facility, 330 Federal Street, Camden, New Jersey 08101.

19.  At times relevant hereto, defendant Taylor was the Warden of the Camden County Correctional Facility, and was empowered to and did formulate, establish and enforce policies at the facility regarding the detention and safety of inmates.

KLINE & SPECTER

## OPERATIVE FACTS

20. On or about December 27, 2003, Joel Seidel was arrested by officers of the Cherry Hill Police Department for allegedly violating a restraining order.

21. Upon his arrest, Mr. Seidel was transported to the Camden County Correctional Facility and he became an inmate at that facility.

22. At the time of his apprehension, Mr. Seidel was known by the police to be mentally ill.

23. Upon his arrival at the Camden County Correctional Facility, it was known by all defendants named herein that Mr. Seidel was mentally ill and required special care and protection while incarcerated.

24. On or about January 3, 2004, the defendants completed an intake form regarding the health and condition of Joel Seidel. This form concluded that Joel Seidel was "manic with delusions of grandeur."

25. On or about January 13, 2004, Joel Seidel appeared at a court hearing before the Honorable Charles M. Rand ("Judge Rand"), at which time he had two black eyes, severe bruises, and swelling of his cheeks, and was unable to walk steadily and had to be wheeled to his place at the counsel table.

26. On or about January 13, 2004, the Camden County Correctional Facility was informed by Camden County Prosecutor Kathleen Delaney that Joel Seidel was being beaten and assaulted in the jail, and needed to be protected so as to prevent such future beatings and assaults by inmates.

27. On or about January 14, 2004, the Camden County Correctional Facility was warned again by another member of the Camden County Prosecutor's Office that Joel Seidel was unsafe in the prison, and required special care and protection.

28. Despite these warnings and Joel Seidel's underlying mental illnesses, the defendants failed to adequately protect or treat Joel Seidel.

29. On or about January 13, 2004, Judge Rand ordered defendant Steininger to perform an evaluation of Joel Seidel's mental capacity and competency.

30. Instead of properly evaluating Joel Seidel pursuant to Judge Rand's Order, defendant Steininger sent a brief letter to the Court on January 19th, indicating only that Joel Seidel needed to be

**KLINE & SPECTER**

evaluated.

31. Defendant Steininger's failure to properly evaluate Joel Seidel prevented the Court from promptly transferring Joel Seidel and caused Joel Seidel to remain in prison much longer than necessary.

32. Upon receiving Steininger's insufficient letter on January 19th, Judge Rand immediately responded and ordered Steininger to evaluate Joel Seidel "A.S.A.P."

33. Despite this clear directive from the Court, defendant Steininger never properly evaluated Joel Seidel.

34. On or about January 23, 2004, and without the benefit of a formal evaluation from defendant Steininger, the Honorable Charles M. Rand issued an Order directing defendants to transfer Joel Seidel to a psychiatric facility. Defendants ignored this Order.

35. On January 27, at approximately 7:00 a.m., the defendants placed Joel Seidel in the same jail cell as Marvin Lister, a known violent prisoner.

36. Approximately three days prior to placing Joel Seidel in Lister's jail cell, Lister had threatened the life of his former cellmate.

37. Lister's former cellmate was so frightened by these threats that he reported Lister's threats to defendants.

38. Upon learning of these threats, the jail promptly removed the inmate from Lister's cell, only to later replace that inmate with Joel Seidel.

39. In 1993, while Lister was an inmate in the mental illness wing of the Camden County Correctional Facility, and while defendant Owens was Warden, Lister brutally beat George Guida ("Guida"), another mentally ill inmate at the Camden County Correctional Facility.

40. Guida was so badly beaten that jail personnel removed him on a stretcher. Guida suffered significant and permanent brain injuries as a result of this beating

41. More recently, Lister had also sexually assaulted another fellow inmate.

42. Prior to placing Joel Seidel in Lister's cell, the defendants were aware of these prior incidents and that numerous inmates were afraid of being housed with Lister.

**KLINE & SPECTER**

43. As a result of these numerous prior incidents, and Lister's known prior criminal record, reputation and general demeanor, defendants knew that Lister was a constant threat to all other inmates, and would attempt to physically harm his cellmates.

44. Despite this notice and knowledge, defendants placed Joel Seidel into the same cell as Lister.

45. After Joel Seidel was placed in Lister's cell, Lister began to punch, beat, kick, and body-slam Joel Seidel, brutally and savagely murdering him.

46. None of the defendants responded to the beating or sought to intervene or protect Joel Seidel.

47. None of the defendants investigated or monitored Joel Seidel's cell at the time of this beating.

48. At no time while he was in the defendants' custody did Joel Seidel ever receive a trial.

49. The defendants allowed Joel Seidel to be beaten to death while he was in their custody and under their exclusive control.

50. Defendant Camden County has admitted that it "knew there were problems in this jail" and that "the January 27th murder of [Joel Seidel] was not an epiphany."

51. At all relevant times hereto, defendants Foster, McIntyre, Williams, Owens and Taylor were employees of the Camden County Correctional Facility, Camden County Department of Corrections, and Camden County, and were acting under the color of state law.

52. At all relevant times hereto, the County of Camden, Camden County Department of Corrections and the Camden County Correctional Facility were vicariously liable for the negligent, reckless, intentional, wrongful, deliberately indifferent and unlawful conduct of defendants Foster, McIntyre, Williams, Owens and Taylor as set forth above and herein.

53. At all relevant times hereto, all defendants were aware of, and recklessly and deliberately indifferent to the need for additional and/or different training, testing, rules, regulations, policies, procedures, guidelines, directives, monitoring, and investigation relating to the detention and protection of individuals with known mental illnesses.

**KLINE & SPECTER**

54. At all relevant times hereto, all defendants were aware of, and deliberately indifferent to the need for additional and/or different training, testing, rules, regulations, policies, procedures, guidelines, and directives with respect to the detention and protections of mentally ill inmates.

55. At all relevant times hereto, all defendants were aware of, and deliberately indifferent to the need for additional and/or different training, testing, rules, regulations, policies, procedures, guidelines, and directives concerning the prison placement of known violent, mentally ill inmates.

56. At all relevant times hereto, all defendants were aware of, and deliberately indifferent to the need for additional and/or different training, testing, rules, regulations, policies, procedures, guidelines, and directives with respect to the assignment of violent and nonviolent offenders to the same jail cell as nonviolent and/or physically slight inmates.

57. All defendants acted with deliberate indifference and without due care, in failing to remove Joel Seidel from his detainment to a hospital for psychiatric treatment. All defendants acted with deliberate indifference to the need for additional and/or different training, testing, rules, regulations, policies, procedures, guidelines, and directives in failing to adequately monitor Joel Seidel while he was in their exclusive custody.

58. The brutal and gruesome death of Joel Seidel was the direct and proximate result of the recklessness and deliberate indifference of all defendants named herein. Such reckless and deliberate indifference consisted of:

    a. failing to provide regular and continuous observation and supervision and/or control of Joel Seidel's activities;

    b. failing to house Joel Seidel in his own jail cell;

    c. placing Joel Seidel in the same jail cell as Marvin Lister;

    d. failing to segregate Marvin Lister from other inmates;

    e. failing to use audio and video monitoring systems to ensure the protection of Joel Seidel;

    f. failing to properly handle and address Marvin Lister;

    g. failing to remove Joel Seidel to a hospital and/or psychiatric facility for psychiatric care;

    h. failing to properly protect Joel Seidel;

**KLINE & SPECTER**

    i. placing Joel Seidel in detainment instead of providing him with timely psychiatric care;

    j. failing to provide Joel Seidel with psychiatric care despite the fact that his police record and medical history reflected psychiatric problems;

    k. leaving Joel Seidel and Lister unattended and unmonitored for long periods of time;

    l. overcrowding of the Camden County Correctional Facility;

    m. overcrowding of the mental illness wing of the Camden County Correctional Facility;

    n. failing to timely evaluate and provide medical treatment to Joel Seidel.

59. As a direct result of the negligent, reckless, deliberately indifferent, intentional, outrageous, and wrongful conduct of the defendants as set forth above and herein, Mr. Seidel suffered severe injuries and damages, including but not limited to the following:

    a. contusions;

    b. lacerations;

    c. injuries to organs and tissues;

    d. pain and suffering;

    e. mental anguish;

    f. disfigurement;

    g. humiliation;

    h. embarrassment; and

    i. death.

60. As a direct and proximate result of all defendants' conduct as described at length above and herein, Joel Seidel died.

61. As a direct and proximate result of all defendants's conduct, which caused Joel Seidel's injuries and death, plaintiffs herein are entitled to recover for their decedent's conscious pain and suffering and other claims for damages recoverable by the decedent had he lived, pursuant to New Jersey law.

62. As a direct and proximate result of the conduct of all defendants named herein, plaintiffs herein are entitled to recovery of pecuniary loss to the surviving next of kin of plaintiff's decedents, as specified by the New Jersey Wrongful Death Act.

63. As a direct and proximate result of the conduct of all defendants named herein, and the injuries and death of Joel Seidel caused thereby, the decedent's survivors were compelled to expend sums of money for funeral and other expenses incurred on behalf of their decedent and are entitled to recover same.

## COUNT I

## CIVIL RIGHTS

### Plaintiffs v. James Foster, James McIntyre, Dorothy Williams, David Owens and Eric Taylor

64. Plaintiffs repeat and reallege the preceding paragraphs as though fully set forth herein.

65. The conduct of the defendants as set forth above, acting under color of state law, was intended to harm Joel Seidel and was recklessly and deliberately indifferent to the safety, bodily integrity, well-being, privacy and liberty of Joel Seidel, and was committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to members of the public and to Joel Seidel, and was so egregious as to shock the conscience.

66. The conduct of the defendants as set forth above violated Joel Seidel's constitutional rights to be free from unreasonable searches and seizures, rights to medical care in custody, rights to be free from cruel and unusual punishment, rights to privacy, and to substantive and procedural due process, as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

67. As a direct and proximate result of the violations of Joel Seidel's civil rights, he was caused to suffer grievous physical injuries and death as set forth above and herein.

WHEREFORE, plaintiffs Sharon Clark and Devra Seidel, as Co-Administrators Ad Prosequendum of the Estate of Joel Seidel, deceased, demand judgment against all defendants, individually and/or jointly and severally, in excess of One Hundred Fifty Thousand ($150,000) dollars, exclusive of interest and costs, which sum includes, but is not limited to:

KLINE & SPECTER

    a.     Damages and costs of suit recoverable under N.J.S.A. 2A:15-3;

    b.     Damages and costs of suit recoverable by plaintiffs' decedent had he lived;

    c.     Compensatory and other damages under the New Jersey Wrongful Death Act;

    d.     Funeral and other expenses incurred on behalf of plaintiffs' decedent;

    e.     All other damages and relief as is deemed necessary and equitable by the Court and/or jury presiding over this case;

    f.     All damages recoverable under 42 U.S.C. § 1983.

## COUNT II

## CIVIL RIGHTS

### Plaintiffs v. Camden County Correctional Facility, Camden County Department of Corrections, Camden County, Prison Health Services, Inc. and Steininger Behavioral Care Services

68.     Plaintiffs repeat and reallege the preceding paragraphs as though fully set forth herein.

69.     The conduct of the defendants as set forth above, acting under color of state law, was intended to harm Joel Seidel and was recklessly and deliberately indifferent to the safety, bodily integrity, well-being, privacy and liberty of Joel Seidel, and was committed in conscious disregard of the substantial and/or unjustifiable risk of causing harm to members of the public and to Joel Seidel, and was so egregious as to shock the conscience.

70.     The conduct of the defendants as set forth above violated Joel Seidel's constitutional rights to be free from unreasonable searches and seizures, rights to medical care in custody, rights to be free from cruel and unusual punishment, rights to privacy, and to substantive and procedural due process, as guaranteed by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and as remediable pursuant to 42 U.S.C. §1983.

71.     As a direct and proximate result of the violations of Joel Seidel's civil rights, he was caused to suffer grievous physical injuries as set forth above and herein.

**KLINE & SPECTER**

WHEREFORE, plaintiffs Sharon Clark and Devra Seidel, as Co-Administrators Ad Prosequendum of the Estate of Joel Seidel, deceased, demand judgment against all defendants, individually and/or jointly and severally, in excess of One Hundred Fifty Thousand ($150,000) dollars, exclusive of interest and costs, which sum includes, but is not limited to:

a. Damages and costs of suit recoverable under N.J.S.A. 2A:15-3;

b. Damages and costs of suit recoverable by plaintiffs' decedent had he lived;

c. Compensatory and other damages under the New Jersey Wrongful Death Act;

d. Funeral and other expenses incurred on behalf of plaintiffs' decedent;

e. All other damages and relief as is deemed necessary and equitable by the Court and/or jury presiding over this case;

f. All damages recoverable under 42 U.S.C. § 1983.


**KLINE & SPECTER**

BY: _____
JONATHAN M. COHEN, ESQUIRE
DOMINIC C. GUERRINI, ESQUIRE
ATTORNEYS FOR PLAINTIFF
1800 Chapel Avenue
Suite 302
Cherry Hill, New Jersey 08002
(856) 662-1180

Dated: April 28, 2004

KLINE & SPECTER

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all counts and all issues raised by this Complaint.

KLINE & SPECTER

BY: _____
JONATHAN M. COHEN, ESQUIRE
DOMINIC C. GUERRINI, ESQUIRE
ATTORNEYS FOR PLAINTIFF
1800 Chapel Avenue
Suite 302
Cherry Hill, New Jersey 08002
(856) 662-1180

Dated: April 28, 2004

Exhibit A

Docket No.: 2004-0528

# State of New Jersey
# Camden County Surrogate's Court

In the matter of the Estate of:

**Joel Seidel, Deceased**

} **LETTERS ADMINISTRATION AD PROSEQUENDUM**

I, Patricia Egan Jones, Surrogate of Camden County and State of New Jersey, do hereby **CERTIFY** that on February 25, 2004, Letters of Administration Ad Prosequendum of decedent, who died intestate, late of the County of Camden and State of New Jersey was granted by me to Sharon Clark, Devra Seidel, of said County of Camden who is duly authorized to bring an action, institute a proceeding or make a claim in their name as such Administrator Ad Prosequendum as is the statute in such case provided.

**DO NOT ACCEPT WITHOUT RAISED SEAL**



WITNESS my hand and seal of office on:

February 25, 2004

_____
Surrogate

_____
Special Deputy Surrogate

F31197

Page 1 of 1